IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORY GILLINS, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 19-CV-5791 |
| | : | |
| JASON NOTHSTEIN, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

ROBRENO, J.                                                  AUGUST  10, 2020

    This matter comes before the Court by way of a Complaint (ECF No. 2), brought by Plaintiff Cory Gillins, proceeding *pro se*.  Also before the Court is Gillins's Motion to Proceed *In Forma Pauperis* (ECF No. 1) and his Prison Trust Fund Account Statement (ECF No. 7).[1] Because it appears that Gillins is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.  For the following reasons, the Complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    FACTUAL ALLEGATONS[2]

    Gillins, a prisoner currently incarcerated at the Lehigh County Jail, appears to bring this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights by Defendant Jason Nothstein, a police officer with the Walnutport Police Department in Northampton County,

---

[1]  By Order dated December 16, 2019, the Court initially denied Gillins's request to proceed *in forma pauperis* without prejudice based on his failure to submit a certified copy of his prisoner account statement.  (ECF No. 6 at 1.)  The Court directed Gillins to either pay $400 to the Clerk of Court or to file a certified copy of his prisoner account statement within thirty days.  (*Id.*) Gillins subsequently filed his certified prisoner account statement.  (ECF No. 7.)  Accordingly, Gillins's Motion to Proceed *In Forma Pauperis* is now properly before the Court for review.

[2]  The factual allegations set forth in this Memorandum are taken from Gillins's Complaint.

Pennsylvania.  (ECF No. 2 at 1.)[3]  Gillins's Complaint alleges multiple violations of his Fourth Amendment rights stemming from a traffic stop and related arrest.  Gillins also names three John Doe Defendants in this matter, but the Complaint does not provide any information regarding the potential identities or titles of these individuals or their role in the events Gillens alleges give rise to his claims.[4]  (Id. at 1, 4.)

In broad, conclusory terms, Gillins alleges generally that he was: (1) a victim of racial profiling; (2) subjected to illegal searches of his person and his car; and (3) subjected to excessive force in the course of his arrest.  (Id. at 4.)  In support of those claims, Gillins alleges that on July 6, 2019, he was driving on Pennsylvania Route 145 when he "was pulled over by . . . Nothstein."  (Id.)  Gillins asserts that Nothstein requested that he exit the vehicle, and that Gillins complied.  (Id.)  According to Gillins, "after a series of sobriety tests" were conducted, he "was choked" and "had his head [was] banged[.]"  (Id.)  He also claims his "face was dragged over concrete" and that he was tasered by "a [sic] officer."[5]  After this encounter, Gillins asserts that he was taken "to St. Lukes" hospital in Allentown "for treatment[,]" which included a cat scan and having his wounds flushed.  (Id.)  Gillins contends that while he was at the hospital he was "told [he] had to give them a vile of blood w/o a warrant."  (Id.)  As a result of his arrest on July 6, 2019, Gillins claims that he "lost [his] vechile[, a] 2001 Saab Aero[, his] home and [his] job"

---

[3]  The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

[4]  Gillins fails to allege whether these individuals were police officers involved in his traffic stop and incident arrest, or medical personnel who later treated him for various injuries.  Without any of this baseline information, the Court cannot accurately assess the plausibility of Gillins's claims against these John Doe Defendants.

[5]  As currently pled, it is difficult to determine from the Complaint whether Gillins is alleging that Nothstein, the officer who initiated the traffic stop, engaged in this conduct, or whether these actions are attributable to one or more of the John Doe Defendants.

and that he spent four months in Northampton County Prison.  (*Id.*)  As relief, Gillins seeks $50

million in compensation for "racial discrimination, injuries, [and] . . . pain and suffering[.]"  (*Id.*)

He also wants "all officers to be terminated from their jobs."[6]  (*Id.*)

A search of the publicly available dockets for the Northampton County Court of

Common Pleas reveals that, as a result of his arrest by Nothstein on July 6, 2019, Gillins was

charged with three counts of driving under the influence of alcohol or a controlled substance,

aggravated assault, simple assault, resisting arrest, use or possession of drug paraphernalia, and

driving without headlights.  *Commonwealth v. Gillins*, CP-48-CR-0002899-2019 (Northampton

County Court of Common Pleas) at 2.  On November 7, 2019, Gillins entered into a negotiated

guilty plea on one count of DUI and one count of simple assault.  (*Id.* at 3-4.)  He was sentenced

to a maximum term of six months confinement on each count to be served consecutively.  (*Id.*)

On the DUI charge, he was also ordered to pay costs and a $1,000 fine, to complete the Alcohol

Highway Safety Program, to be paroled to an inpatient treatment facility, and to follow all

treatment recommendations.  (*Id.* at 3.)  In addition, Gillins's driver's license was suspended for

twelve months.  The remaining charges against him were withdrawn at the time of his

sentencing.  (*Id.* at 3-4.)

## II.    STANDARD OF REVIEW

The Court will grant Gillins leave to proceed *in forma pauperis* because it appears that he

is incapable of paying the fees to commence this civil action.[7]  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if, among other things, it fails to

---

[6]  To the extent Gillins seeks the termination of "all officers" from their jobs, this appears to
indicate that one or more of the John Doe Defendants are potentially police officers, but again,
the Complaint is silent on the identities of the John Doe Defendants.

[7]  However, because Gillins is a prisoner, he is obliged to pay the filing fee in installments in
accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Gillins is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

Gillins's Complaint raises claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court.[8] Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs."  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Moreover,

---

[8] Although Gillins does not specifically reference any particular statute or legal authority, he submitted his Complaint on a previous version of the form complaint utilized by this Court for § 1983 actions.  This construction of the Complaint is also consistent with the nature of the allegations Gillins raises here.

4

"[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Gillins's Complaint fails to allege a plausible claim.  Beyond generally alleging that Defendant Nothstein pulled Gillins over on July 6, 2019, Gillins's Complaint does not attribute any other specific conduct to Nothstein or any other John Doe Defendants.  Without more detailed factual allegations, it is unclear to the Court exactly what Gillins seeks to challenge here and who is allegedly responsible for the challenged conduct.  Liberally construing the Complaint, he could be challenging any, or all, of the following: (1) the initial basis for Nothstein's traffic stop itself; (2) the search of his vehicle; (3) the search of his person; (4) the basis for his arrest; (5) the alleged use of force against him in effectuating that arrest;  (6) the seizure of his blood at St. Luke's Hospital; and (7) his incarceration at Northampton County Prison for a period of four (4) months.  (ECF No. 2 at 4.)

To the extent Gillins's Complaint can be understood to allege claims for false imprisonment or malicious prosecution, the Court notes that "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

(state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

Here, the conviction and sentence arising from the July 6, 2019 arrest were not reversed on direct appeal, were not expunged by executive order, were not declared invalid by a state tribunal, and were not called into question by the issuance of a writ of habeas corpus. Accordingly, to the extent Gillins's Complaint can be read to seek damages for his imprisonment or for alleged constitutional violations that occurred in the course of a criminal prosecution, it is clear that the prosecution did not terminate in his favor. Thus, Gillins cannot maintain such claims under § 1983 at this time. Accordingly, these claims will be dismissed without prejudice subject to refiling as a new case if a challenge to his conviction or sentence is later resolved in his favor.

However, *Heck* does not bar all Fourth Amendment claims. *Heck*, 512 U.S. at 487 n. 7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action [i.e., a suit for damages attributable to an allegedly unreasonable search], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.") (citations omitted). "*Heck* bars only claims which 'seek [ ] to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful.'" *Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 223-24 (3d Cir. 2016) (quoting *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998)). *Heck* "requires District Courts to determine whether each claim — if successful — would imply the invalidity of the conviction or sentence." *Id.* at 224 (quoting

*Gibson v. Superintendent*, 411 F.3d 427, 447-49 (3d Cir. 2005) (holding that a determination whether *Heck* applies to a Fourth Amendment claim requires a case-by-case fact-based inquiry)).

In this case, *Heck* does not necessarily bar Gillins's Fourth Amendment claims challenging the searches of his person and vehicle, his arrest on the evening of the traffic stop, or whether the police used excessive force in effectuating his arrest, although *Heck* prevents Gillins from recovering damages on those claims for any injury related to his conviction and imprisonment allegedly stemming from the July 6, 2019 events.  *See Heck*, 512 U.S. at 487 n.7 ("[T]he § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." (citations omitted)); *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (observing that "[b]ecause a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, . . . [plaintiff's] claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in *Heck* which necessarily implicate the validity of a conviction or sentence"); *see also Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010) (joining the majority of the courts of appeals in "rejecting [the] argument that [a plaintiff's] conviction for simple assault automatically precludes him from recovering on his § 1983 claim" for excessive force).  However, Gillins's Fourth Amendment claims related to the events of July 6, 2019 fail because they are not adequately pled.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause.  *See Orsatti v. N.J. State Police*,

71 F.3d 480, 482 (3d Cir. 1995).  "[P]robable cause to arrest exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a

reasonable person to believe that an offense has been or is being committed by the person to be

arrested."  *Id.* at 483.  Likewise, "probable cause justifies a search."  *Whren v. United States*, 517

U.S. 806, 819 (1996).  The Fourth Amendment also prohibits a law enforcement officer from

using "excessive force in the course of making an arrest, investigatory stop, or other 'seizure.'"

*Graham v. Connor*, 490 U.S. 386, 388 (1989).  "'Seizure' alone is not enough for § 1983

liability; the seizure" – including the force used to effect the seizure – "must be 'unreasonable.'"

*Brower v. Inyo Cty.*, 489 U.S. 593, 599 (1989).  To determine whether an officer's use of force

was unreasonable, "a court must consider[ ] all of the relevant facts and circumstances leading up

to the time that the officers allegedly used excessive force."  *Rivas v. City of Passaic*, 365 F.3d

181, 198 (3d Cir. 2004).

Here, Gillins has not alleged sufficient facts to state a plausible claim that he was

searched or seized without probable cause.  Although he baldly alleges that his person and his

vehicle were searched illegally, he does not provide factual allegations in support of those

conclusory assertions.  Likewise, Gillins suggests that he was impermissibly stopped due to

"racial profiling" but he does not provide any facts at all in support of that allegation.

Accordingly, Gillins has failed to allege sufficient facts and circumstances to support a plausible

inference that Nothstein, or any John Doe police officer, lacked probable cause to stop him,

search him or his car, or detain him for driving under the influence (a charge to which he later

pled guilty).  Although Gillins may also be raising a claim based on having to provide his blood

without a warrant, he does not allege which of the Defendants were responsible for this activity, so his claims are not plausible as pled.

Gillins has also failed to state a plausible claim of excessive force because he does not tie any of the alleged incidents of force used against him to any individual named as a Defendant (either Nothstein or the John Does). Additionally, he fails to plead facts demonstrating the use of force to which he was subjected was unreasonable or excessive in light of the totality of the circumstances surrounding his arrest. This is particularly true in light of the fact that Gillins was initially charged with resisting arrest, aggravated assault, and simple assault stemming from the events of July 6, 2019, and later pled guilty to a charge of simple assault. These charges and his guilty plea "suggest[] that there are more facts and circumstances relevant to the question [of] whether the officers' actions were 'objectively reasonable.'" *See Bradley v. Jersey City Police Dep't.*, Civ. A. No. 12-5236, 2013 WL 4606710, at *5 (D.N.J. Aug. 29, 2013) (dismissing excessive force claim with leave to amend at screening under § 1915(e)(2)(B) where claim was made in the "absence of a fuller factual description" because plaintiff failed to allege facts relevant to "whether the officers had reason to believe that he was actively resisting arrest or attempting to flee"). Here, Gillins's Complaint simply does not contain a full enough description of the relevant facts which could nudge his claims of excessive force over the line from conceivable to plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that to state a claim for relief plaintiff must allege enough facts to nudge his claim across the line from conceivable to plausible). In a vacuum, broad allegations of the force used and a mere recitation of the alleged injuries are inefficient to state a plausible claim for excessive force. *Cf. Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some

degree of physical coercion or threat thereof to effect it."); *cf. id.* at 396 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." (citation omitted)).  Accordingly, Gillins's Fourth Amendment claims fail.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").  The Court will grant Gillins leave to file an amended complaint in the event he is able to plead additional facts and cure the deficiencies identified by the Court.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Gillins leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Gillins will be given leave file an amended complaint.  An appropriate Order follows, which provides additional instructions as to amendment.

10